Next matter on the docket, People v. Adkins, 5-23-0746. Helen, if you are ready to proceed, you may, and please identify yourself for the record. Good morning. My name is Julie Thompson. I'm here from the Office of the State Appellate Defender representing Ms. Adkins on the direct appeal of her conviction for aggravated battery of a child. Ms. Adkins has been here before, before this court. In 2022, this court reversed Ms. Adkins' conviction for aggravated battery of a child and remanded this matter for a new trial because Ms. Adkins received ineffective assistance of counsel, where defense counsel consented to the police interviewing Ms. Adkins without counsel being present. This court ordered new trial with new counsel. On remand, new counsel was appointed for Ms. Adkins, and a jury trial was held. She was found guilty. We are here today because the defense counsel and the trial court all determined that this court got it wrong when it remanded this case for a new trial. In fact, the trial court said that it was unfortunate that this court remanded this case for something that never happened. But according to the record, it did happen. According to the record, yes, Your Honor, it most certainly did. This case started in Are we just supposed to treat this like a shower scene in Dallas? It didn't happen? Pam woke up and Bobby was alive, right? Yes. I think maybe that is their position. I simply don't know how we disregard what occurred. We started in 2017 with this investigation, and Ms. Adkins was arrested on May 15. I'm sorry, on May 12 she was arrested. On May 15, Detective Haney interviewed Ms. Adkins at the county jail. A year later, in October of 2018 at Ms. Adkins' bench trial, Detective Haney testified that when he conducted that interview outside of the public defender's presence. In fact, at that bench trial, when Detective Haney testified that he had consent to interview Ms. Adkins, the State's attorney asked him if Ms. Adkins had any accountability for the actions of her co-defendant and her being her trial. It's the only evidence they had. During that interview, he had the consent of the public defender to conduct that interview outside of the public defender's presence. He asked him, are you sure we had consent? And he answered yes. On remand, the court appointed a new public defender. It was Chief Public Defender Vaughn this time. When her former public defender was still employed at the public defender's office, he was working as an assistant public defender in juvenile court. Vaughn filed a motion to suppress the statement that Ms. Adkins gave to Haney. In that motion to suppress, he didn't raise the issue of Haney's consent or Quinn's consent, Quinn's consent to Haney. Instead, he said that there had been a long delay that allowed the State to exploit an opportunity to obtain an interview with Ms. Adkins. At the motion hearing on the motion to suppress, the State called public defender Quinn, who testified that he never gave consent to Haney. Then the State called Haney, and Detective Haney testified that he did not have Quinn's consent. Six years after the interview and five years after his original testimony, he completely changes his testimony, recants his earlier testimony, and denies that he had consent. The Chief Public Defender, Mr. Vaughn, who had been appointed as the second attorney for Ms. Adkins, accepts that as true. Doesn't do much cross- examination of Quinn at all. Does very little of Haney. In the cross that he does of Quinn, he allows Quinn to say five times that he never consented. In the cross that he does of Haney, he says, well, it's been a long time, but he never goes any further than that. An actual conflict of interest exists when there is a specific deficiency in counsel's strategy, tactics, or decision-making that is attributable to that conflict, and that is Yoast, an Illinois Supreme Court decision. Vaughn's failure to conduct vigorous cross-examination of Quinn, his employee, and Haney, the detective who originally testified that he had consent, is an actual conflict of interest. It certainly could not have been anything else, and it was not trial strategy. It didn't benefit Ms. Adkins in any way. When one public defender asserts ineffective assistance of counsel of another public defender, the courts are supposed to look for circumstances that are peculiar to the case to determine whether or not an actual conflict exists. And I would submit to this court that this is a set of circumstances that are quite peculiar to this case. Vaughn is Quinn's boss, and in Hardin, the Supreme Court said that an actual conflict of interest can exist when public defenders are in hierarchical positions as they are here. Vaughn's actual... Excuse me. I'm worried about the slippery slope where you have a public defender appointed and then a different public defender appointed, and the argument can be made as to actual conflict just because of the relationship in the public defender's office. I mean, we have limited resources, so we have to be careful of the slippery slope. We do have limited resources, Your Honor, and Jefferson County has a very small public defender's office. I think there's only four currently employed there. And so it is not an uncommon situation for one public defender to have to take over the case and accuse another one of being ineffective, potentially. Where the difference, I think, happens here is that this was just such a blatant disregard of his obligation to Ms. Atkins when he took no serious effort to cross-examine Quinn or Haney with regard to this. And that's why the case law is distinctive because, as you point out, when it's a public defender accusing another public defender, it's not an automatic actual conflict of interest. And the case law does say that. That's why we have to have some peculiar set of circumstances, which I think this rises to that level, to justify imposing an actual conflict of interest situation on this. And when you look at what the law requires on an actual conflict, this Court in Hays said there's a two-part test. Was there a conflict, and did that conflict adversely affect counsel's performance? So I think there's a lot of conflicts. So was there... Your position that it's a blatant disregard, I mean, he filed a motion to suppress. He called Mr. Quinn as a witness, right? Actually, the State called him. The State called him, but he cross-examined him, correct? Yes. How far, I mean, how far did he need to go? I think that probably the magic question here should have been, and I kind of get to this in our second issue where we talk about the State's violation of the advocate witness role, that Quinn was never asked... Quinn sat through that bench trial. He was there. He was counsel. When Haney testified, Quinn was the attorney. He was never asked, why didn't you just fix it? When Haney testified that you gave your consent, why did you not just say, judge, sorry, we have a problem here? It was a bench trial. There was no jury to be prejudiced by any activity like that. The same issue happens with the State. The State's attorney says at the end of this motion hearing, well, judge, I know what happened. I knew when Haney testified to that, he was wrong, but I didn't fix it because I didn't think it mattered. And then the appellate court got a hold of it and sent it back. So now we have to fix it. That's why we're all here today. The State violated the advocate witness role, and again, Vaughn made no objection to the State's violation of the advocate witness role. When the State told the court, you have to believe Haney's recantation testimony, you cannot believe what he testified to at the original bench trial. So for those reasons, Your Honors, we believe that the public defender's office here had an actual conflict of interest and that the State violated the advocate witness role. We ask this Court to remand again for another new trial. This time we have asked that the Court order a new trial judge, a new State's attorney, as well as a new defense attorney, and give Ms. Atkins one shot at a fair trial. Thank you. Any final questions? Is the advocate witness role that you claim was violated, is that enough in and of itself to reverse? I think it is. Is there a case law that you're aware of which reverses based on that issue alone? I believe we've cited one in our brief, Judge, where a case has been reversed for violation. I'm hoping it's people versus glue, maybe. Yes. Would that be the one? I think so. Okay. Thank you. Appellate, whenever you're ready, and please identify yourself for the record. Thank you, Your Honors. At Police Accord Council, I'm Becky Ray, arguing for the State, and I would first like to address Justice Cates' question about Blue, addressing Blue, which the defendant has cited for the proposition that the State violated the witness advocate rule. Blue is distinguishable from the current case. First of all, Blue was a jury trial. The issue that we are raising here occurred at a motion to suppress hearing, and was before a judge, as was the new trial motion, where some of the State's comments were made. So we have a difference there where Blue was in front of a jury, and in this case was not. Are you saying it was more prejudicial than Blue because it was in front of a jury? Yes, because a judge is presumed to know and follow the law, and so the judge can determine whether the State's comments were or were not actually testimony, and clearly they weren't. The Court knew that the State was not under oath, and the prosecutor was not on the stand, so his comments were not testimony. They were follow-up to comments that Vaughn had made regarding this Court's Rule 23 order, and the State was just merely commenting as a follow-up to that. Additionally, in Blue, the prosecutors were making objections that were not proper objections. They were in immediate and direct response to witness testimony, and they repeatedly argued in front of this jury that the witness was lying when they would make their objections. So they made speaking objections? Correct, and incorrect objections as well. So those objections permeated the case. Here, the comments were very isolated, and they were not under oath. They were in response to commenting why an issue was not addressed in the motion to suppress hearing as this Court might have expected it to be. Additionally, the comments were made not about an issue that was in front of the trial court at that time, but about Haney's testimony that had occurred at the first trial, which was a previous proceeding. Albeit in the same case, it was already a previous proceeding that the defendant had appealed, and this Court had already reversed. So those comments essentially were in reference to a prior bench trial. And there was also no indication here that the trial court relied on the State's comments about Haney's testimony being incorrect. There's nothing in the Court's written order so indicating there's no oral pronouncement of that Court's order anyway. And unlike in Blue, where the Court sustained some of the objections made by the State immediately after the State said this witness is lying, and the Court sustained them, it was clear that the Court was relying on those comments by the State, the speaking objections by the State in adopting their position. It's not clear in this case that that ever happened. But didn't the trial court say it's unfortunate that the telecourt reversed on something that didn't happen? The trial court did say that. My interpretation is a little bit different than the defendant's. On the record that this Court had before it, when this case came up the first time, the ruling was based on that record. The record is not the same now. There was testimony at the motion to suppress hearing that some of the statements that were made at the bench trial by Detective Haney were incorrect. That was corrected at the motion to suppress hearing, not only by Haney, who said, I didn't talk to Quinn that day, and also by Quinn, who testified for the very first time at the motion to suppress hearing, not at the previous proceeding which this Court reversed. My take on that is... Quinn said, it couldn't have happened because I always send a letter telling my people, keep your mouth shut, and don't talk to anybody. How could Vaughn not have asked him, where's the letter? Vaughn could have asked him. Don't you think he should have asked him? And doesn't that look like a conflict to me? I don't think it's a conflict, Your Honor, and I will tell you why. Because Quinn wasn't the only one whose testimony that was relevant to this issue. Haney's testimony was as well. So we have two people who are saying the same thing. While this defendant asserts that Quinn was the sole source of information about his behavior, we also have Haney's testimony saying, I never talked to Quinn. So there's two people saying... Excuse me, Ms. Drake, but the issue comes down to a credibility issue for the trial court. That is correct. And the trial court is in the best position. No disrespect to this Court, but this Court is looking at a cold record. The trial court was not. able to observe the witnesses as they testified, was able to observe their demeanor, and additionally had the benefit of hearing their testimony. But it also had the benefit of the State's explanation. So it didn't change its mind from the time it said it got sent back for something that didn't happen. Well, that may be true, but the Court had the benefit of listening to the testimony about what did happen and what didn't happen. And what didn't happen in this case was that Quinn did not give his consent to Haney to intervene with the defendant, either with or without him present, according to Quinn. And that testimony is supported not only by Quinn, who gave testimony for the first time under oath at this motionous press hearing, but also by Haney, who said, I was mistaken. I never got permission from Quinn. I never spoke to him that day. Did we have the same trial judge? It was the same trial judge, Judge Priestle, if I'm saying that correctly. And by appointing the public defender's office, placing Vaughn in a position to have to cross-examine his own employee Quinn, didn't that trial judge just give the defense a softball and tee this up for another appeal? Well, Judge, I think the law doesn't say that there's a per se conflict when, you know, State's attorneys or assistant State's attorneys, excuse me, public defenders or assistant public defenders accuse the other of being ineffective. But the optics are terrible, aren't they? Well, they're not great, but that doesn't necessarily mean that not great equals an actual conflict. And I don't think that the defendant here has shown that there is an actual conflict. Vaughn has a duty to his client, first and foremost. That's his job. And he has sworn to do that, to have a duty to his client. You know, basing Vaughn's performance strictly on a speculative conflict that he did his reputation and his office's reputation ahead of representing the person that he has been assigned to represent to the best of his ability, I think that is just, again, just purely speculative. There's nothing in the record. I don't want to be seen as hiring incompetent people. It isn't, but I don't think that there's any evidence here, in this case, that Quinn was incompetent. He was clearly testified. He remembers this. He was on vacation at that time. First of all, he wouldn't have been available for anyone to speak with and ask if he consented to the interview. He was on vacation. So I think that's a factor to be considered in whether or not his testimony was truthful, as opposed to whether or not he's just trying to save his own skin, or whether Vaughn's trying to save his own skin. Quinn wasn't available to ask, can we interview your client? They could have called him, whether he's on vacation or not. They could have, Judge, but that's not on the record. That's not a fact before this Court, and it wasn't a fact before the trial court. Quinn testified unequivocally. I gave no one permission. I don't know whether they contacted me or not. He said that. I don't remember. But I gave no one permission to speak to my client. So, I mean, how can Vaughn be accused of trying to protect his reputation when Quinn's testimony is that I didn't do anything to be ineffective, essentially. So that's where we are. That's my answer to your question there. I see I have just a little bit of time left. The defendant has advocated for second pronged plain error, but there's only rare circumstances in which that happens, and the defendant has not identified any of those rare circumstances as noted by the Illinois Supreme Court or the United States Supreme Court where second pronged error applies. And so I would ask that this Court deny that second pronged plain error review, and for all the reasons argued here and as argued in the State's brief, this Court should affirm the defendant's conviction. Thank you so much. Thank you, Ms. Ray. Thank you. Thank you, Counsel. Thank you. You're welcome. The State told the trial court, I'm actually the one that can fill in the gaps. When it was said by Mr. Haney during the trial, I knew then that it was wrong. I asked a second time, are you sure, and I remember the emphasis on are you sure, and the detective doubled down on it, and because that issue had not been raised, had not been pled, and I thought the record insufficient, I let it go. That was the State's excuse to the Court. That was the witness testimony from the State's attorney at the end of the motion to suppress hearing where the State violated the advocate witness rule. The optics here are terrible. Ms. Adkins sat and watched her prior defense lawyer give testimony against her interest. Any layperson looking at that from the outside has to question the justice being served in that type of a situation. The trial judge here, when he made the comment about it's unfortunate the appellate court reversed and sent it back for something that never happened, and Haney, and a statement from the prosecutor, and a defense attorney who made no objection, no vigorous cross-examination to the two witnesses who testified. He had nothing left to go on. There was nothing more for that trial judge to do. Everybody agreed that this never happened, but we all know that it did because the record shows that it did. This court did not make it up. Haney testified the way he testified. Haney's recantation testimony, and that's what it is, recantation testimony, is inherently unreliable. Every single time this Court is faced with a situation where testimony is recanted, the first comment made is that recantation testimony is inherently unreliable. Haney wasn't asked, where were you when you realized you made this mistake? Did you just wake up one morning and go, oh my gosh, in 2018 I gave testimony that was incorrect. Who else was in the room when you realized you made this mistake? He wasn't asked anything like that by Vaughn. Vaughn just rolled over and accepted that this was true. And because he did, he created a conflict of interest in his own office. And for that reason, we ask this Court to amend for a new trial. Thank you.